Fulton County Superior Court
***EFILED***TV
Date: 6/17/2021 3:48 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **VON KING, DANIELLE JOHNSON, GERELINE THOMPSON, CHELSEA SHAW, and JANE/JOHN DOE 1-9,**<br><br>**Plaintiffs, on behalf**<br>    **of themselves and all others**<br>        **similarly situated,**<br><br>**v.**<br><br>**STATE OF GEORGIA, GEORGIA DEPARTMENT OF LABOR, and COMMISSIONER MARK BUTLER, in his official capacity,**<br><br>**Defendants.** | **CIVIL ACTION** 2021CV350906<br><br>JURY TRIAL DEMANDED<br><br>(CLASS ACTION) |

## COMPLAINT FOR DECLARATORY
## AND INJUNCTIVE RELIEF AND DAMAGES

### INTRODUCTION

In the midst of the largest unemployment catastrophe in recent memory, the Georgia Department of Labor ("GDOL") has repeatedly failed to follow the law governing the payment of unemployment benefits.  State and federal law guarantees certain promptness and due process rights to Plaintiffs, and all other members of the classes that Plaintiffs seek to represent.  Repeatedly and systematically, the GDOL

#3218322v1

- 1 -

has violated those rights—failing to make prompt determinations regarding unemployment benefits, failing to provide prompt appeal hearings of those determinations, and failing to make payments that are undeniably due.

Indeed, a brief scan of the GDOL's own social media pages reveals innumerable posts highlighting the extent of the GDOL's failures, inaccessibility, and severe delays in determining eligibility, paying benefits, and scheduling appeal hearings.  The below posts—all posted since June 4, 2021—show that these delays remain a common and pressing issue:

- "I got a job offer can't get there due to y'all not providing the benefits I've been approved for since 5/28 after waiting 9 weeks y'all really playing with my life it's so wrong."

- "I need help with my claim since March…they keep saying email and no response."

- "How about figuring out how to properly disburse this to the thousands of ppl waiting for help before talking about taking it away? There are thousands of ppl waiting for GDOL to do their jobs. Ppl waiting months on months on months. I guess when it's not your life or your kids it's easier to not care…"

- "Georgia Department of Labor can you resolve the mystery of when you will be opening your offices up? If the state is open and it's safe for us to return to work, why are you still closed?"

- "I am waiting on back payments from 6- 27 to 7-25 2020. I've done everything including going back to work in August 2020. I filed a new claim due to bye year ending and nothing. Who do I contact?"

- "I have a determination letter from over a year ago for PEUC. You guys have told me to keep claiming each week. Still no deposits. Now I'm

not going to see that money?! 11 months and no one can return a phone call or email…"

- "I have been unemployed since March 2021. I have called several phone numbers and even emailed [Mark] Butler about my situation. Currently all my utilities bills are past due and on disconnection notice…"

- "My husband was approved for pua because he is 1099 so didn't approve for UI. He was approved last year and has never received a payment and has done all they have asked!!! We have emailed and left messages no one ever calls back! I also talked with someone on fb through this site they said they would put him on a call list but nope nothing!"

- "Please help me. It's dire. I'm in critical need of assistance. I reapplied in March, received 2 payments, was asked to verify id and I did that, received a letter May 7[th] stating the amount I've been approved for, but have yet to receive another payment.  [I've] been certifying each week. I've left over 60 messages without any return calls. I'm in the process of being foreclosed on and I'm 2 months behind on my car. Please help me. I'm desperate. I'm going on 9 weeks without pay. This is a dire situation."

- "I filed an appeal in August. Still NOTHING! It's June! Timeliness?? I beg to differ!"[1]

As a result of the GDOL's failures, Plaintiffs, on behalf of themselves and all others similarly situated, file this Class Action Complaint for damages and declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and Ga. Const. Art. 1 § 2 ¶ V to compel Defendants State of Georgia, the GDOL, and GDOL Commissioner Mark Butler in his official capacity to comply with their obligations

---

[1] Ga. Dep't of Labor, Official Facebook webpage.

under the Georgia Employment Security Law, O.C.G.A. § 34-8-1 *et seq.* and regulations promulgated in accordance with this law, to promptly process unemployment applications, make determinations of eligibility, pay the unemployment benefits for which they have been deemed eligible, and schedule requested administrative appeal hearings.

The failures of Defendants—during a time where so many Georgians are in desperate need of assistance—violate the law and the rights of Plaintiffs and their fellow Class Members, and they have caused monetary damage.  Further, the failures will not stop unless the Court declares that Defendants have violated the law and enjoins Defendants from continued violations and mandates that Defendants comply with state and federal law.  Plaintiffs thus ask the Court to (1) certify the classes specified below, (2) declare that the Defendants' practices violate Georgia statutory law and federal constitutional law, (3) provide the injunctive relief specified below and any other injunctive relief that the Court deems just and proper; (4) find that the State has violated the Due Process Rights of the Class Members under 42 U.S.C. § 1983, and award those damages that a jury determines are owed.

## BACKGROUND

1.

The COVID-19 global pandemic hit the State of Georgia hard, creating a constant source of economic stress, fear, and anxiety for Georgians.  Georgia has

seen countless businesses substantially decrease their operating capacity or cease operating altogether, resulting in thousands of employees exercising significant cuts in their hours and wages or losing employment.   Consequently, unemployed Georgians are struggling to pay for housing, utilities, and medical care for themselves and their families.[2]  These effects from the pandemic underscore the need for prompt determinations of eligibility, payment of unemployment compensation to eligible claimants, and scheduling of administrative appeals hearings.

2.

The pandemic has led to devastating levels of unemployment in Georgia.  At its peak, unemployment in Georgia rose to 12.6% in 2020.[3]  The total number of regular initial unemployment claims filed in Georgia reached 4,155,205 for the period between the weeks ending in March 21, 2020, and December 12, 2020,

---

[2] Ray Khalfani, Ga. Budget & Policy Institute, *State of Working Georgia: 2020 COVID Crisis Year-End Review* (Dec. 18, 2020), http://bit.ly/3o18LK3; Amanda Aguilar, *Delays in unemployment benefits still plague the jobless in Georgia*, Fox5 Atlanta, Dec. 23, 2020, http://bit.ly/2KPkBZz; Christopher Quinn & Matt Kempner, *Georgians ground down by waits for unemployment assistance*, Atlanta Journal Constitution, June 4, 2020, http://bit.ly/3hQlflD.

[3] Georgia Department of Labor, *Unemployment Rate and Nonagricultural Employment*,  https://dol.georgia.gov/unemployment-rate-and-nonagricultural-employment (last visited Jun. 8, 2021).

compared to a total of 194,077 claims filed for a similar period in 2019 (between weeks ending March 23, 2019, and December 14, 2019).[4]

3.

The U.S. Congress responded to the country-wide unemployment crisis by expanding unemployment benefits throughout the country.  As of March 2021, Congress allocated $67 million to the GDOL to "assist the state with the administrative functions required to set up programs to administer and distribute the three temporary Unemployment Insurance benefits created under the Coronavirus Aid Relief and Economic Security (CARES) Act (P.L. 116-136)."[5]

4.

Despite the millions of dollars in assistance, applicants for unemployment benefits in Georgia have experienced extreme delays at every step of the process, including waiting several months for a GDOL claims examiner to consider their application for benefits and determine their eligibility, to receive payments for which they have been deemed eligible, and to have their appeals hearing scheduled.

---

[4] U.S. Dep't of Labor, *Unemployment Insurance Weekly Claims Data, available at* http://bit.ly/358vAnw (last visited Dec. 29, 2020) (select "State" and enter "2020" for "Beginning Year" and "Ending Year" and select "Georgia").

[5] Letter from Georgia's Democratic Congressional Delegation to Acting Inspector General ("Democratic Congressional Delegation Letter") (March 10, 2021), *available at*  https://bourdeaux.house.gov/sites/evo-subsites/bourdeaux.house.gov/files/evo-media-document/2021.03.09%20DOL%20OIG%20Letter_FINAL.pdf.

Applicants frequently go months without being able to reach anyone at the GDOL or being contacted by someone at the GDOL.

5.

Although there are approximately 400,000 Georgians currently receiving benefits, there were approximately 180,000 who had yet to have their applications reviewed as of March of 2021.[6] And although the GDOL stated in December of 2020 that there are no longer back logs in processing claims for those who are initially considered eligible, the GDOL Commissioner, Defendant Mark Butler, admitted that the number of claims still waiting to be adjudicated was "probably anywhere between 40,000-50,000."[7]

6.

The law expressly requires that the GDOL act promptly because

> Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the General Assembly to prevent its spread and to lighten its burden which so often falls with crushing force upon the unemployed worker or the worker's family.

O.C.G.A. § 34-8-2. Here, Defendants' extreme delays violate this provision. This has forced Plaintiffs and their fellow Class Members to face months of uncertainty,

---

[6] Democratic Congressional Delegation Letter, *supra* n. 5.
[7] Elizabeth Rawlins, *GDOL commissioner responds to calls for investigation into unemployment claims process*, Fox5 Atlanta, Dec. 24, 2020, http://bit.ly/3n1TJCy.

dealing with this "crushing force" while struggling to pay rent and utilities, feed themselves and their families, and pay other regular expenses like medical bills and car payments.

7.

The extreme delays in the unemployment application process are a result of policies and procedures within Defendants' control.  For example, despite the alarming unemployment rates and numbers of applications for unemployment benefits in Georgia, the GDOL has employed half of the staff (only 1,066 in 2020), that it had during the Great Recession (2,219 in 2019).[8]

8.

Defendants' failures are demonstrated by the ability of other states to properly process their unemployment applications.  Indeed, state rankings by the U.S. Department of Labor on core measures related to the administration of Unemployment Insurance show that Georgia is severely underperforming.[9]

9.

On the core measure on promptness of first payment ("First Payments in 14/21 days") Georgia ranked 28th, with only 59.4% of payments made within that

---

[8] *See* Khalfani, *supra* n. 2.
[9] U.S. Dep't of Labor, *State Rankings of Core Measures*, *available at* https://oui.doleta.gov/unemploy/ranking.asp (last visited March 23, 2021).

timeframe for the last quarter of 2020.[10]   This category measures the number of days elapsed between the week-ending date of the first compensable week in the benefit year and the date payment is made; its "acceptable level of performance" is at least 87%.[11]  Although Georgia improved in this category in the first quarter of 2021, with 74.5% of payments made within that timeframe, Georgia still fell well below the "acceptable level of performance" of 87%.[12]

10.

Georgia fares even worse when it comes to "nonmonetary determinations in 21 days," ranking 40th—with only 12.7% of determinations made within 21 days during the last quarter of 2020.[13]  The acceptable level for this measure is 80%.[14]  A nonmonetary determination (claims examiner's determination) in Georgia is a determination informing a claimant whether they qualify to receive benefits based

---

[10] *Id*. (select "First Payments in 14/21 days" and starting quarter October 2020 and ending quarter December 2020).

[11] U.S. Dep't of Labor, *Core Measures and Acceptable Levels of Performance*, available at  *https://oui.doleta.gov/unemploy/pdf/Core_Measures.pdf*  (last visited April 26, 2021).

[12] U.S. Dep't of Labor, *State Rankings of Core Measures*, *available at* https://oui.doleta.gov/unemploy/ranking.asp (select "First Payments in 14/21 days" and starting quarter January 2021 and ending quarter March 2021) (last visited March 23, 2021).

[13] *Id.* (select "Nonmonetary Determinations 21-day Timeliness" and starting quarter October 2020 and ending quarter December 2020).

[14] U.S. Dep't of Labor, *Core Measures and Acceptable Levels of Performance*, available at  *https://oui.doleta.gov/unemploy/pdf/Core_Measures.pdf*  (last visited April 26, 2021).

on their reason for job separation, their availability for work, and other eligibility requirements in accordance with the Georgia Employment Security Law.[15]

11.

Georgia's performance only got worse in this category during the first quarter of 2021.  Not only did Georgia's ranking drop even lower than the previous quarter, but its own rates of nonmonetary determinations dropped from 12.7% to just over 10%.[16]

12.

Most alarming of all, Georgia had the second longest delay in the entire country on "Average Age of Pending Lower Authority Appeals."  This measure is the sum of the ages, in days from filing, of all pending Lower Authority Appeals divided by the number of Lower Authority Appeals.  In the last quarter of 2020, these appeals had an average age of **217.8 days**.[17] The acceptable level for this measure is 30 days or less.[18]

---

[15] *See* Ga. Dep't of Labor, *Unemployment Insurance Claimant Handbook* (hereinafter "Handbook") at 15, *available at* https://bit.ly/2JuPgdJ.

[16] *Id*. (select "Nonmonetary Determinations 21-day Timeliness" and starting quarter January 2021 and ending quarter March 2021).

[17] *Id.* (select "Average Age of Pending Lower Authority Appeals" and starting quarter October 2020 and ending quarter December 2020).

[18] U.S. Dep't of Labor, *Core Measures and Acceptable Levels of Performance*, available at  *https://oui.doleta.gov/unemploy/pdf/Core_Measures.pdf*  (last visited April 26, 2021).

13.

Once again, Georgia's performance only got worse during the first quarter of 2021.  The average age of lower authority appeals in Georgia increased by over 38 days, leading to an average age of 256.4.[19]  Only West Virginia performs worse on this metric.

## PARTIES

14.

Plaintiff Von King is a resident of Clarke County, Georgia.

15.

Plaintiff Danielle Johnson is a resident of DeKalb County, Georgia.

16.

Plaintiff Gereline Thompson is a resident of Burke County, Georgia.

17.

Plaintiff Chelsea Shaw is a resident of Floyd County, Georgia.

18.

Defendants are the State of Georgia, the Georgia Department of Labor, and GDOL Commissioner Mark Butler, in his official capacity.  These Defendants may be served by providing a copy of the complaint and summons to the Attorney

---

[19] *Id.* (select "Average Age of Pending Lower Authority Appeals" and starting quarter January 2021 and ending quarter March 2021).

General of Georgia at 40 Capitol Square SW, Atlanta GA 30334, or by personal

service.

## JURISDICTION AND VENUE

### 19.

This Court has jurisdiction over this action pursuant to Ga. Const. Art.

VI § 4 ¶ 1.

### 20.

Venue is proper in this Court pursuant to Ga. Const. Art. VI § 2 and O.C.G.A.

§ 9-4-1 *et seq.*

## STATEMENT OF FACTS COMMON TO THE CLASSES

### *Federal and State Unemployment Insurance Compensation in Georgia*

### 21.

Created in 1935 during the Great Depression, Unemployment Insurance is a

joint federal-state system, overseen by the federal government and operated by the

states, that provides cash benefits to qualifying individuals to limit immediate

hardship experienced from the loss of employment and in turn, to stabilize the

economy by shoring up workers' purchasing power during economic downturns.[20]

---

[20] Chad Stone & William Chen, Ctr. On Budget & Policy Priorities, *Introduction to Unemployment Insurance* (2020), http://bit.ly/38MFU5Q.

#3218322v1

22.

Unemployment insurance provides payments to states to finance the administration of their Unemployment Insurance compensation laws. 42 U.S.C. §§ 501-504.

23.

Georgia is eligible to receive Unemployment Insurance from the federal government if it meets certain federal requirements, including that its law has a provision for "such methods of administration . . . as are found by the Secretary of Labor to be reasonably calculated to insure full payment of unemployment compensation *when due*."  42 U.S.C. § 503(a)(1) (emphasis added).

24.

This section of the Social Security Act is known as the "when due" provision. The federal regulation interpreting the "when due" provision requires that Georgia unemployment compensation laws provide for "such methods of administration as will reasonably ensure the full payment of unemployment benefits to eligible claimants with the greatest promptness that is administratively feasible."  20 C.F.R. § 640.3(a).

25.

In accordance with these federal requirements, Georgia passed the Employment Security Law, O.C.G.A. § 34-8-1 *et seq*.  This law creates the Georgia

Department of Labor and gives the Commissioner power to operate a program of

unemployment compensation.

26.

The Georgia statute recognizes that:

> Economic insecurity due to unemployment is a serious menace
> to the health, morals, and welfare of the people of this state.
> Involuntary unemployment is therefore a subject of general
> interest and concern which requires appropriate action by the
> General Assembly to prevent its spread and to lighten its burden
> which so often falls with crushing force upon the unemployed
> worker or the worker's family.

O.C.G.A. § 34-8-2.

27.

"Unemployment benefits provide cash to a newly unemployed worker 'at a

time when otherwise [they] would have nothing to spend,' serving to maintain the

recipient at subsistence levels without the necessity of [their] turning to welfare or

private charity." *Ca. Dep't of Human Res. v. Java*, 402 U.S. 121, 131-32 (1971).

28.

The courts must "liberally construe and apply [employment security laws] in

the light of the public policy of this State," and "shall be guided by the fact that the

unemployment compensation law is intended to provide some income for persons

who are, without fault of their own, temporarily out of employment." *Dalton Brick*

& *Title Co. v. Huiet*, 102 Ga. App. 221, 223 (1960) (quoting *Young v. Bureau of Unemployment Comp.*, 63 Ga. App. 130, 135 (1940)).

### Georgia Law Requires "Prompt" Administration of Unemployment Insurance Benefits

29.

Georgia law requires that the administration of the unemployment benefits process be taken promptly.  *See, e.g.,* O.C.G.A. § 34-8-192(a) (requiring prompt determination of benefits); *id.* § 34-8-192(d) (requiring prompt payment of benefits); Ga. Comp. R. & Regs. 300-2-5-.02(2)(a) (requiring prompt appeals).

30.

Prompt determinations, payments, and appeals are necessary to ensure that unemployment benefits serve their statutory purpose of replacing lost income to avoid economic hardship.  *See* § 34-8-192(a), (d); ); Ga. Comp. R. & Regs. 300-2-5-.02(2)(a).

### The Law Specifically Requires Prompt Initial Determinations, Payments, and Appeals

31.

To qualify for paid benefits in Georgia, an individual must meet the following requirements:

- sufficient insured wages—the claimant must have earned enough insured wages during the base period to qualify for benefits.  The base period is the

first four of the last five completed calendar quarters at the time the claimant

files their claim;

- job separation from claimant's last employer due to no fault of their own;

- proof of claimant's lawful presence in the United States;

- and the claimant must be able, available, and actively searching for suitable

  work, although this requirement was suspended during the pandemic in March

  2020.[21]

32.

After a claimant submits their application, the GDOL reviews and processes

the application.  An Unemployment Insurance Benefit Determination—also known

as a monetary determination—is mailed to the claimant advising the claimant if they

have enough insured wages to establish a claim.  This notice is not yet an approval

to receive benefits.  This notice informs the claimant of their potential weekly benefit

amount and the number of weeks allowed.[22]

33.

A notice of claim filing and request for separation information are then sent

to the last employer for whom the claimant has worked and from whom the claimant

was separated.[23]

---

[21] Handbook at 4.
[22] *Id*. at 11
[23] *Id*.

34.

A claimant then begins to claim benefits and is required to submit their work search record each week.[24]

35.

The GDOL reviews the claimant's claim for eligibility based on the reason for separation from their most recent employer and on the claimant's availability to work.[25]

36.

A claimant must claim at least one week of benefits for the GDOL to review their claim.[26]

37.

The claimant will be contacted only if additional information is needed.[27]

38.

A Claim's Examiner's Determination—also known as a non-monetary determination—is mailed to the claimant informing them if benefits are allowed or denied.[28]

---

[24] *Id*. at 12
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.*

39.

This initial determination of a claim "shall be made promptly." *See*

O.C.G.A. § 34-8-192(a).

40.

According to the GDOL's own handbook, claimants must call the GDOL

customer service immediately if they have not received an eligibility determination

from the claims examiner within 19 days of claiming a week of benefits.[29]

41.

If a claimant is approved for unemployment benefits by a claims examiner,

the GDOL shall pay the claimant "promptly."  O.C.G.A. § 34-8-192(d).

42.

According to the GDOL's own handbook, this means benefit "payments will

be released within 24-48 hours of the Claims Examiner's Determination being

mailed to [the claimant]."[30]

43.

If a claimant receives an unfavorable decision from the claims examiner, the

claimant must file an appeal with the Appeals Tribunal within 15 days of issuance

of the decision.  O.C.G.A. § 34-8-220.  Appeal hearings challenging the initial

---

[29] *Id*. at 12.

[30] *Id*.

determination "*shall* be scheduled *promptly*."   Ga. Comp. R. & Regs. 300-2-5-.02(2)(a) (emphasis added).

### The GDOL Has Utterly Failed to Comply with the Law, Subjecting Plaintiffs and Class Members to Extreme Delays

44.

Despite the "prompt" processes mandated by Georgia statutes, regulations, and policy, Defendants are failing to act or perform in a prompt manner, which has caused Plaintiffs and Class Members to experience extreme delays—for months at a time—at every step of the claims process.

45.

In the last quarter of 2020, Georgia had only completed 12% of non-monetary determinations within 21 days, ranking 40th in the nation, dropping to only 10% in the first quarter of 2021.[31]  In the last quarter of 2020, Georgia's pending lower authority appeals had an average wait of 217.8 days, the second longest in the entire nation, increasing to 256.4 days in the first quarter of 2021.[32]  Other state's successes

---

[31] U.S. Dep't of Labor, *State Rankings of Core Measures*, *available at* https://oui.doleta.gov/unemploy/ranking.asp (last visited March 23, 2021) (select "nonmonetary Determinations in 21 days" and starting quarter October 2020 and ending quarter December 2020).
[32] *Id.* (select "Average Age of Pending Lower authority Appeals" and starting quarter October 2020 and ending quarter December 2020).

demonstrate that the GDOL's failures need not have occurred in the first place and

certainly need not continue.[33]

46.

Moreover, Defendant GDOL Commissioner Butler admitted that only about

15 percent of the people who call the GDOL get through to someone who can help.[34]

### *Certain Plaintiffs and Countless Other Individuals Failed to Receive A Prompt Benefits Determination—And They Are Still Waiting*

47.

Plaintiff Johnson, Plaintiff Shaw, and Plaintiff Does 1-3 were denied a prompt

initial determination and have still not received a determination (hereinafter the

"Prompt Determination Plaintiffs").

48.

**Plaintiff Chelsea Shaw** is a new mother, caring for her 10-month-old infant,

as well as her younger sister.  Before the pandemic, Plaintiff Shaw worked at a gas

station and had to stop working due to complications with her pregnancy. Plaintiff

Shaw filed for state unemployment benefits on or about December 2019, and never

heard back from the GDOL.

---

[33] *Id.*

[34] Rebecca Lindstrom and Lindsey Basye, *Despite record overtime hours, 85% of callers still can't get through to Ga. Department of Labor*, 11Alive, Apr. 14 2021, https://www.11alive.com/article/news/investigations/the-reveal/georgia-department-of-labor-overtime-and-unanswered-calls/85-1c39ebcf-06a2-4c30-b807-6764253859fa.

49.

Plaintiff Shaw filed again for unemployment benefits on or about February 2020, but was locked out of her account in the GDOL online system.  She repeatedly called the GDOL, with little success of reaching someone; if she did reach someone, she would get repeatedly transferred and was provided no answers on the status of her claim.

50.

Plaintiff Shaw has never received a determination on her claim since she filed over a year ago.  She has struggled to pay for everyday essentials for herself and her family, and has had to rely on the income of her husband, as well as food stamps and other state-provided benefits.

51.

**Plaintiff Danielle Johnson** worked at a Kaiser Permanente urgent care clinic until she was diagnosed with COVID at the beginning of 2021 while she was pregnant.  She had to leave her job and she filed a claim for unemployment on or about March 1, 2021.  Plaintiff Johnson has been verifying payments on a weekly basis since that time.

52.

The GDOL has failed to provide any eligibility determination to Plaintiff Johnson.  Plaintiff Johnson has tried to call the GDOL repeatedly, has sent emails,

and has even reached out to her local and state representatives for assistance, all to no avail.  Her determination remains pending.

### *Certain Plaintiffs and Countless Other Individuals Failed to Receive Prompt Payments of Their Benefits—And They Are Still Waiting*

53.

Plaintiff Thompson and Plaintiff Does 4-6 were denied prompt payment of benefits after their initial determination, and have still not received payment of their benefits (hereinafter the "Prompt Payment Plaintiffs").

54.

**Plaintiff Gereline Thompson** works for the Burke County Board of Education and has worked there since 2018.  She applied for benefits when Burke County schools shut down due to the pandemic.   The GDOL mailed her Unemployment Insurance Benefit Determination on or about June 4, 2020, informing Plaintiff Thompson that her claim was effective March 29, 2020.  Plaintiff Thompson also received her Claims Examiner's Determination, which stated that she qualified to be paid unemployment benefits.  She has yet to receive any payments due to her.  Plaintiff Thompson has consistently tried to get in touch with someone at the GDOL. She has tried calling and tried to reach someone through the GDOL website, to no avail.

***Certain Plaintiffs and Countless Other Individuals Failed to Receive Prompt Appeals—And They Are Still Waiting***

55.

**Plaintiff Von King** and Plaintiff Does 7-9 were denied a prompt appeal, and still have not received a hearing (hereinafter the "Prompt Appeal Plaintiffs").

56.

Plaintiff King worked at Two Men and a Truck.  She is a mother of a two-year-old, and she recently welcomed her second child.  When the pandemic hit, her two-year-old son was left without daycare.

57.

Plaintiff King—who was pregnant with her second child at the time—brought her son to work with her until her son's doctor recommended that her son not be out in public due to health concerns.  Plaintiff King had to leave her job in order to take care of her child.

58.

 Plaintiff King applied for benefits on or about May 2020, and filed a timely appeal on or about August, 2020.  The GDOL has failed to schedule her appeal in over 13 months.

59.

Without necessary Unemployment Insurance benefits, countless Georgians cannot pay for housing, utilities, food, or medical care, leaving them in financially

#3218322v1

devastating situations. Thus, the level of urgency among underemployed and long-term unemployed Georgians, who are unable to support themselves and their families, remains high.[35]

60.

Accordingly, notwithstanding their clear "promptness" duties under Georgia law, Defendants have failed to ensure that eligibility for unemployment benefits is promptly determined, eligible benefits are promptly paid, and appeal hearings are promptly scheduled for unemployed and underemployed Georgia claimants.

## CLASS ACTION ALLEGATIONS

61.

Plaintiffs bring this action under O.C.G.A. § 9-11-23 on behalf of themselves and three separate classes of similarly situated people.

### *The Prompt Determination Class*

62.

The Prompt Determination Plaintiffs seek to certify the following class:

> All individuals who (a) have been partially or totally unemployed between March 1, 2020, and the present; (b) have applied for unemployment benefits distributed by the Georgia Department of Labor; (c) did not receive an initial determination

---

[35] *See* Khalfani; *supra letter* n. 2; Aguilar, *supra* n.2; Quinn & Kempner, *supra* n.2.

of eligibility within four weeks of their application; and (d) are still awaiting an initial determination.

63.

This Prompt Determination Class satisfies the requirements of O.C.G.A. § 9-11-23 under subsections (a) and (b)(1)-(3) for the following reasons:

64.

***Numerosity***: The Class is so numerous that joinder of all members of the Class is impracticable.  Plaintiffs are unable to allege at this time the exact number of Class Members; however, Plaintiffs believe that there are at minimum tens of thousands of Class Members.  Plaintiffs believe that Defendant's records maintained in the ordinary course of business will readily reveal the exact number of Class Members.

65.

***Commonality***: Common questions of law and fact predominate in this action. The central questions in this dispute are applicable to all Class Members, including, for example:

1. the meaning and enforceability of the promptness requirement in O.C.G.A. § 34-8-192(a);

2. whether the GDOL's common policies and practices have violated the promptness requirement in O.C.G.A. § 34-8-193(a);

3. whether the GDOL's common policies and practices, and the resulting delay, constitute a violation of the Class Members' due process rights and thus a violation of the U.S. Constitution and 42 U.S.C. § 1983; and

4. the appropriate injunctive and declaratory relief to remedy the Defendants' failures.

66.

**Typicality**: The Prompt Determination Plaintiffs' claims are typical of the other members of the Class, as Plaintiffs and other members of the Class suffered the same type of harm – i.e. a delay in their initial determination, and they are all subject to the same uniform policies and practices related to this delay.

67.

**Adequacy**: Plaintiffs will fairly and adequately represent and protect the interests of the Class, and have retained counsel competent and experienced in complex class actions.  Plaintiffs are members of the Class, have no interest antagonistic to any other members of the Class, and Defendants have no defense unique to any individual Plaintiffs, as Plaintiffs do not seek a particular outcome for any individual applicant based on that applicant's situation.  Rather, Plaintiffs seek relief which would end unreasonable delays so that all Class Members will have access to a system that delivers prompt decisions.

68.

This Prompt Determination Class meets the requirement of § 9-11-23(b)(1) in that prosecution of separate actions by the individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct by the GDOL.  Additionally, the prosecution of separate actions by individual members of the Class would create the risk of adjudications with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

69.

This Prompt Determination Class meets the requirement of O.C.G.A. § 9-11-23(b)(2) in that Defendants have acted or failed to act on grounds that apply generally to the Class, so that final injunctive or declaratory relief is appropriate respecting the Class as a whole.  The GDOL has engaged in a common course of conduct applicable to all Class Members, and Plaintiffs seek an order directing the GDOL to change its conduct as it relates to all Class Members.

70.

In addition, this Prompt Determination Class meets the requirement of § 9-11-23(b)(3) in that the questions of law or fact common to the members of the Class

predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### *The Prompt Payment Class*

71.

The Prompt Payment Plaintiffs seek to certify the following class:

> All individuals who (a) have been partially or totally unemployed between March 1, 2020, and the present; (b) have applied for unemployment benefits distributed by the Georgia Department of Labor; (c) received a determination that they were eligible; (d) did not receive payments within four weeks of their application; and (e) are still awaiting payment.

72.

This Prompt Payment Class satisfies the requirements of O.C.G.A. § 9-11-23 under sections (a) and(b)(1)-(3), for the following reasons:

73.

*Numerosity*: The Class is so numerous that joinder of all members of the Class is impracticable.  Plaintiffs are unable to allege at this time the exact number of Class Members; however, Plaintiffs believe that there are at minimum tens of thousands of Class Members.  Plaintiffs believe that Defendant's records maintained in the ordinary course of business will readily reveal the exact number of Class Members. § 9-11-23(a)(1).

74.

*Commonality*: Common questions of law and fact predominate in this action.

The central questions in this dispute are applicable to all Class Members, including,

for example:

1. the meaning and enforceability of the promptness requirement in O.C.G.A. §

   34-8-192(d);

2. whether the GDOL's common policies and practices have violated the

   promptness requirement in O.C.G.A. § 34-8-192(d);

3. whether the GDOL's common policies and practices, and the resulting delay,

   constitute a violation of the Class Member's due process rights and thus a

   violation of the U.S. Constitution and 42 U.S.C. § 1983;

4. whether the Class Members are entitled to damages; and

5. the appropriate injunctive and declaratory relief to remedy the GDOL's

   failures.

   § 9-11-23(a)(2).

75.

*Typicality*: The Prompt Payment Plaintiffs' claims are typical of the other

members of the Class, as Plaintiffs and other members of the Class suffered the same

type of harm – i.e. a delay in payments to which they are entitled, and they are all

subject to the same uniform policies and practices related to this delay.  ¶ 9-11-23(a)(3).

76.

*Adequacy*: Plaintiffs will fairly and adequately represent and protect the interests of the Class, and have retained counsel competent and experienced in complex class actions.  Plaintiffs are members of the Class, have no interest antagonistic to any other members of the Class, and Defendant has no defense unique to any individual Plaintiffs as Plaintiffs do not seek a particular outcome for any individual applicant based on that applicant's situation.  Rather, Plaintiffs seek relief which would end unreasonable delays so that all Class Members will have access to a system that delivers prompt payments.  ¶ 9-11-23(a)(4).

77.

The Prompt Payment Class meets the requirement of § 9-11-23(b)(1) in that prosecution of separate actions by the individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct by the GDOL. Additionally, the prosecution of separate actions by individual members of the Class would create the risk of adjudications with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other

members not parties to the adjudications or substantially impair or impede their ability to protect their interests, given, for example, that they seek injunctive relief.

78.

The Prompt Payment Class also meets the requirements of § 9-11-23(b)(2) because Defendant has acted or failed to act on grounds that apply generally to the Class, so that final injunctive or declaratory relief is appropriate respecting the Class as a whole.  The GDOL has engaged in a common course of conduct applicable to all Class Members, and Plaintiffs seek an order directing the GDOL to change its conduct as it relates to all Class Members.

79.

In addition, this Prompt Payment Class meets the requirement of § 9-11-23(b)(3) in that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### *The Prompt Appeal Class*

80.

The Prompt Appeal Plaintiffs seek to certify the following class:

All individuals who (a) have been partially or totally unemployed between March 1, 2020, and the present; (b) have applied for unemployment benefits distributed by the Georgia

Department of Labor; (c) received an initial determination that they were ineligible; (d) filed a timely appeal; (e) did not receive an appellate hearing and determination within four weeks of their initial determination; and (f) are still awaiting a hearing or determination.

81.

This Prompt Appeal Class satisfies the requirements of O.C.G.A. § 9-11-23 under sections (a) and (b)(1)-(3) for the following reasons:

82.

*Numerosity*: The Class is so numerous that joinder of all members of the Class is impracticable. Plaintiffs are unable to allege at this time the exact number of Class Members; however, Plaintiffs believe that there are at minimum tens of thousands of Class Members. Plaintiffs believe that Defendant's records maintained in the ordinary course of business will readily reveal the exact number of Class Members.

83.

*Commonality*: Common questions of law and fact predominate in this action. The central questions in this dispute are applicable to all Class Members, including, for example:

1. the meaning and enforceability of the promptness requirement under Ga. Comp. R. & Regs. 300-2-5-.02(2)(a);

2. whether GDOL's common policies and practices have violated the promptness requirement under Ga. Comp. R. & Regs. 300-2-5-.02(2)(a);

3. whether the GDOL's common policies and practices, and the resulting delay, constitute a violation of the Class Member's due process rights and thus a violation of the U.S. Constitution and 42 U.S.C. § 1983;

4. whether the Class Members are entitled to damages as a result of the due process violation; and

5. the appropriate injunctive and declaratory relief to remedy the GDOL's failures.

84.

*Typicality*: The Prompt Appeal Plaintiffs' claims are typical of the other members of the Class, as Plaintiffs and other members of the Class suffered the same type of harm – i.e. a delay in the scheduling of an appeal hearing to which they are entitled, and they are all subject to the same uniform policies and practices related to this delay.

85.

*Adequacy*: Plaintiffs will fairly and adequately represent and protect the interests of the Class, and have retained counsel competent and experienced in complex class actions.  Plaintiffs are members of the Class, have no interest antagonistic to any other members of the Class, and Defendant has no defense unique to any individual Plaintiffs as Plaintiffs do not seek a particular outcome for any individual applicant based on that applicant's situation.  Rather, Plaintiffs seek relief

which would end unreasonable delays so that all Class Members will have access to a system that delivers prompt payments.

86.

The Prompt Appeal Class meets the requirement of § 9-11-23(b)(1) in that prosecution of separate actions by the individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct by the GDOL. Additionally, the prosecution of separate actions by individual members of the Class would create the risk of adjudications with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

87.

The Prompt Appeal Class also meet the requirements of § 9-11-23(b)(2) because Defendants have acted or failed to act on grounds that apply generally to the Class, so that final injunctive or declaratory relief is appropriate respecting the Class as a whole.  The GDOL has engaged in a common course of conduct applicable to all Class Members, and Plaintiffs seek an order directing the GDOL to change its conduct as it relates to all Class Members.

88.

In addition, this Prompt Appeals Class meets the requirement of § 9-11-23(b)(3) in that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT ONE

**FAILURE TO MAKE PROMPT INITIAL DETERMINATIONS UNDER O.C.G.A. § 34-8-192(a) AND GA. CONST. ART. VI § 2**

**(On Behalf of the Prompt Determination Plaintiffs and Prompt Determination Class)**

89.

Plaintiffs expressly incorporate by reference and re-allege as if set forth fully herein the preceding allegations of this complaint, and set forth the following count.

90.

Georgia law provides that an initial determination of a claim "*shall* be made *promptly*." O.C.G.A. § 34-8-192(a) (emphasis added).

91.

Despite the requirement for a prompt determination, and despite Named Plaintiffs Shaw and Johnson and Prompt Determination Class Members' desperate need for assistance, Defendants have failed to provide prompt determinations and

Plaintiffs Shaw and Johnson and Prompt Determination Class Members have experienced extreme delays, often waiting months at a time.

92.

As a result of the Defendants' conduct, the Prompt Determination Plaintiffs and the Prompt Determination Class are entitled to a declaration under Ga. Const. Art. VI § 2 that Defendants conduct violates O.C.G.A. § 34-8-192(a).

93.

The Prompt Determination Plaintiffs and the Prompt Determination Class are entitled to an injunction ordering that the Defendants take all necessary actions to comply with the promptness requirement of O.C.G.A. § 34-8-192(a).

94.

This injunctive relief includes, at a minimum, (a) an injunction to end Defendants' violations of § 34-8-192(a), (b) an injunction to compel the Defendants to issue claims examiner's determinations to Prompt Determination Plaintiffs and Prompt Determination Class Members within three weeks of any order granting an injunction; and (c) any further relief that equity and justice require in order to ensure that the Defendants comply with the law, which could include, *inter* alia, appropriate staffing, training, computer software, monitoring and public reporting of determination processes and results.

## <u>COUNT TWO</u>

## VIOLATION OF FEDERAL DUE PROCESS CONSTITUTIONAL RIGHTS, PURSUANT TO 42 U.S.C. § 1983 AND THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION

### (On Behalf of the Prompt Determination Plaintiffs and Prompt Determination Class)

95.

Plaintiffs expressly incorporate by reference and re-allege as if set forth fully herein the preceding allegations of this complaint, and set forth the following count.

96.

The Prompt Determination Plaintiffs and the Prompt Determination Class have a protected property interest, *inter alia*, in their right to a prompt determination guaranteed by O.C.G.A. § 34-8-192(a).

97.

Defendants' conduct has deprived the Prompt Determination Plaintiffs and the Prompt Determination Class of their protected rights to prompt determination without due process of law, in violation of the guarantees of the United States Constitution.

98.

The Prompt Determination Plaintiffs and the Prompt Determination Class are entitled to damages under 42 U.S.C. § 1983 as a result of this violation of their rights.

99.

The Prompt Determination Plaintiffs and the Prompt Determination Class are also entitled under 42 U.S.C. § 1983 to: (a) an injunction prohibiting the continued deprivation of their due process rights as well as an injunction compelling Defendants' issuance of prompt payments to Prompt Payment Plaintiffs and the Prompt Payment Class within three weeks of an order granting an injunction, and (b) declaratory relief declaring such failures a violation of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

## COUNT THREE

### FAILURE TO MAKE PROMPT PAYMENTS UNDER O.C.G.A. § 34-8-192(d) AND GA. CONST. ART. VI § 2

**(On Behalf of the Prompt Payment Plaintiffs and Prompt Payment Class)**

100.

Plaintiffs expressly incorporate by reference and re-allege as if set forth fully herein the preceding allegations of this complaint, and set forth the following count.

101.

Georgia law provides that Defendants shall pay a claimant "promptly." O.C.G.A. § 34-8-192(d).

102.

Despite the requirement for a prompt payment, and despite Named Plaintiff Thompson's and Prompt Payment Class Members' desperate need for assistance, Defendants have failed to provide prompt payments and Named Plaintiff Thompson and the Prompt Payments Class Members have experienced extreme delays, often waiting months at a time for payments.

103.

As a result of Defendants' conduct, the Prompt Payment Plaintiffs and the Prompt Payment Class are entitled to a declaration under Ga. Const. Art. VI § 2 that Defendants' conduct violates O.C.G.A. § 34-8-192(d).

104.

The Prompt Payment Plaintiffs and the Prompt Payment Class are entitled to an injunction under Ga. Const. Art. VI § 2 compelling Defendants to take all necessary actions to comply with the promptness requirement of O.C.G.A. § 34-8-192(d).

105.

This injunctive relief includes, at a minimum, (a) an injunction to end Defendants' violations of Georgia's statutory law, (b) an injunction to compel the Defendants to make payments to the Prompt Payment Plaintiffs and Prompt Payment Class Members within three weeks of an order issuing an injunction; and (c) any

further relief that equity and justice require in order to ensure that Defendants comply with the law, which could include, *inter alia*,  appropriate staffing, training, computer software, monitoring and public reporting of payment processes and results.

## COUNT FOUR

**VIOLATION OF FEDERAL DUE PROCESS CONSTITUTIONAL RIGHTS, PURSUANT TO 42 U.S.C. § 1983 AND THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION**

**(On Behalf of the Prompt Payment Plaintiffs and Prompt Payment Class)**

106.

Plaintiffs expressly incorporate by reference and re-allege as if set forth fully herein the preceding allegations of this complaint, and set forth the following count.

107.

The Prompt Payment Plaintiffs and the Prompt Payment Class have a protected property interest, *inter alia*, in their right to prompt payment of benefits guaranteed by O.C.G.A. § 34-8-192(d).

108.

Defendants' conduct has denied the Prompt Payment Plaintiffs and the Prompt Payment Class of their protected rights without due process of law, in violation of the guarantees of the United States Constitution.

109.

The Prompt Payment Plaintiffs and the Prompt Payment Class are entitled to damages under 42 U.S.C. § 1983 as a result of this violation of their rights.

110.

The Prompt Payment Plaintiffs and the Prompt Payment Class are also entitled to declaratory relief and an injunction under 42 U.S.C. § 1983 prohibiting the continued deprivation of their due process rights as well as an injunction compelling Defendants' issuance of prompt payments to Prompt Payment Plaintiffs and the Prompt Payment Class within three weeks of an order granting an injunction

## COUNT FIVE

### FAILURE TO PROVIDE PROMPT APPEALS UNDER
### GA. COMP. R. & REGS. 300-2-5-.02(2)(A) AND GA. CONST. ART. VI § 2

**(On Behalf of the Prompt Appeal Plaintiffs and Prompt Appeal Class)**

111.

Plaintiffs expressly incorporate by reference and re-allege as if set forth fully herein the preceding allegations of this complaint, and set forth the following count.

112.

An appeal hearing challenging an initial determination "*shall* be scheduled *promptly*." Ga. Comp. R. & Regs. 300-2-5-.02(2)(a) (emphasis added).

113.

Despite the requirement of a promptly scheduled appeal hearing, and despite Named Plaintiff Thompson and Prompt Appeal Class Members' desperate need for assistance, Defendants have failed to provide prompt appeals and Named Plaintiff Thompson and the Prompt Appeal Class Members have experienced extreme delays, often waiting months at a time.

114.

As a result of Defendants' conduct, the Prompt Appeal Plaintiffs and the Prompt Appeal Class are entitled to a declaration under Ga. Const. Art. VI § 2 that Defendants' conduct violates Ga. Comp. R. & Regs. 300-2-5-.02(2)(a).

115.

The Prompt Appeal Plaintiffs and the Prompt Appeal Class are entitled to an injunction under Ga. Const. Art. VI § 2 compelling Defendants to take all necessary actions to comply with the promptness requirement of Ga. Comp. R. & Regs. 300-2-5-.02(2)(a).

116.

This injunctive relief includes, at a minimum, (a) an injunction to end Defendants' violations of Georgia's statutory law, (b) an injunction to compel the Defendants to ensure prompt appeals are scheduled for Prompt Appeal Plaintiffs and Prompt Appeal Class members, as well as Defendants' issuance of prompt appeal

hearings for Prompt Appeal Plaintiffs and Prompt Appeal Class Members within three weeks of an order issuing an injunction, and (c) any further relief that equity and justice require in order to ensure that the Defendants comply with the law, which could include, *inter alia*, appropriate staffing, training, monitoring and public reporting of appellate processes and results.

## <u>COUNT SIX</u>

**VIOLATION OF FEDERAL DUE PROCESS CONSTITUTIONAL RIGHTS, PURSUANT TO 42 U.S.C. § 1983 AND THE FOURTEENTH AMENDMENT OF THE U.S. CONSTUTITION**

**(On Behalf of the Prompt Appeal Plaintiffs and Prompt Appeal Class)**

117.

Plaintiffs expressly incorporate by reference and re-allege as if set forth fully herein the preceding allegations of this complaint, and set forth the following count.

118.

The Prompt Appeal Plaintiffs and the Prompt Appeal Class have a protected property interest, *inter alia*, in their right to a prompt appeal under Ga. Comp. R. & Regs. 300-2-5-.02(2)(a).

119.

Defendants' conduct has denied the Prompt Appeal Plaintiffs and the Prompt Appeal Class of their protected rights without due process of law, in violation of the guarantees of the United States Constitution.

#3218322v1

- 43 -

120.

The Prompt Appeal Plaintiffs and the Prompt Appeal Class are entitled to damages under 42 U.S.C. § 1983 as a result of this violation of their rights.

121.

The Prompt Appeal Plaintiffs and the Prompt Plaintiff Class are also entitled to declaratory relief and an injunction under 42 U.S.C. § 1983 prohibiting the continuing deprivation off their due process rights as well as an injunction compelling Defendants' scheduling of prompt appeal hearings for Prompt Appeal Plaintiffs and the Prompt Appeal Class within three weeks of an order granting an injunction.

## **Prayer for Relief**

Wherefore, Plaintiffs respectfully request the Court to provide the following relief:

A. Trial by jury on each issue so triable;

B. Certification of each Class identified above;

C. Judgment for the Plaintiffs and each Class on each count listed above;

D. Declaratory Judgment for the Named Plaintiffs and each Class declaring that Defendants' conduct violates the law, as detailed in each Count listed above,

E.  Preliminary and Permanent injunctions requiring that Defendants take the steps necessary to comply with the law, as detailed in each Count listed above;

F.  All actual, exemplary and punitive damages, to which Plaintiffs and Class Members are entitled;

G.  Attorney's fees and costs for pursuing this Action; and

H.  Such other relief as justice may require.

Respectfully submitted, this 16th day of June, 2021

*/s/ Jason J. Carter*
Jason J. Carter
Ga. Bar No. 141669
Juliana Mesa
Ga. Bar No. 585087
**BONDURANT, MIXSON & ELMORE, LLP**
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, GA  30309-3417
Phone: (404) 881-4100
Facsimile: (404) 881-4111

Emily C.R. Early
Georgia Bar No. 810206
**The Southern Poverty Law Center**
P.O. Box 1287
Decatur, Georgia 30031-1287
Tel.: 404-521-6700
emily.early@splcenter.org

***Attorneys for Plaintiffs***